## MARCO v. STATE OF INDIANA.

[No. 23,480. Filed November 19, 1919.]

1. RECEIVING STOLEN GOODS.—*Reception from Robbers.—Larceny.*—It is no defense to a prosecution for receiving stolen goods that the article received was taken by robbers, and not in the commission of a larceny, since every robbery includes a larceny. p. 542.

2. RECEIVING STOLEN GOODS.—*Variance.*—In a prosecution for receiving stolen goods, there is no variance between an affidavit charging larceny of the article received and the evidence showing that the article was taken by robbers, since every robbery includes a larceny. p. 542.

3. RECEIVING STOLEN GOODS.—*Ownership of Goods.—Evidence.—Sufficiency.*—In a prosecution for receiving a stolen automobile

under an affidavit charging the ownership to have been in a named person, evidence tending to show that two men conspired to take it from the owner and sell it, and that in the execution of their intention the owner was killed, was sufficient to support a verdict of guilty, though the owner was dead at the precise time of the taking, since, the intention having existed long before the owner's death, the jury was justified in finding that to all intents and purposes the automobile was stolen prior thereto. p. 545.

4. RECEIVING STOLEN GOODS.— Instruction.— Certainty.— In a prosecution for receiving a stolen automobile, an instruction that, if the jury should find that the two named persons alleged to have taken the automobile, or either of them, shot and killed the owner and, as a part of such transaction, took possession of the automobile, the taking under the circumstances constituted a larceny and that this would be true even though they intended to rob the owner of the car and not to steal it, was not erroneous as being misleading, uncertain or ambiguous. pp. 546, 547.

5. RECEIVING STOLEN GOODS.—Instruction.—Applicability to Issues.—In a prosecution for receiving a stolen automobile, an instruction on the subject of conspiracy, pursuant to which the defendant and another procured automobiles to be stolen for them to sell, in which instruction the jury was told that, if such conspiracy existed, the defendant would be bound by all things done and said by his coconspirator in carrying out the conspiracy, was not erroneous as being inapplicable to the issues. pp. 546, 548.

From Daviess Circuit Court; James W. Ogdon, Judge.

Prosecution by the State of Indiana against Hyman Marco. From a judgment of conviction, the defendant appeals. Affirmed.

Alvin Padgett and Hastings, Allen & Allen, for appellant.

Ele Stansbury, Attorney-General, Elmer E. Hastings, Dale F. Stansbury and A. H. Greenwood, for the state.

HARVEY, J.—Appellant, Marco, was convicted by a jury in the Daviess Circuit Court upon an affidavit charging him with unlawfully and feloniously buying, concealing, and aiding in the concealment of one Dodge Brothers' automobile, of the value of $700, the personal

chattel of one Andrew Manos; that appellant then and there well knew the same to have been feloniously stolen by one Chatten and one Larrison. Appellant relies here upon an alleged error of the circuit court in overruling his motion for a new trial, the first cause of which is that the verdict of the jury is contrary to law. It is not claimed that the verdict of the jury is not sustained by sufficient evidence.

In support of the proposition that the verdict is contrary to law, it is claimed by appellant that it appeared from the evidence that the automobile was taken by robbers, and not taken in the commission of a larceny thereof.

Upon this point it is sufficient to say that, even so, every robbery includes a larceny. The affidavit charges a larceny, and the material allegations thereof

1. are established, even though the transaction might also be termed a robbery. The above statement also disposes of the proposition that

2. there is a variance, in that the affidavit is not supported by the evidence, for the same reason.

It is further asserted that the evidence does not support a conviction upon this affidavit for the reason that the ownership is, by the affidavit, charged to have been in one Manos at the time the automobile was taken; whereas, the evidence shows that said Manos was dead at said time, and appellant also claims that the allegation in the affidavit that appellant knew said automobile to have been stolen at the time he is charged to have purchased, concealed and aided in the concealment thereof, is not supported by the evidence.

A statement of the facts appearing in the evidence relating to this matter will aid in the solution of the two propositions last referred to, and also in determining whether there was error in the giving of instructions Nos. 4½ and 8 by the court on its own motion.

Dewey Chatten and Virgil Larrison, who are the persons charged with having stolen the car in question, testified for the state, and it appears from their testimony, which is very strongly corroborated, that they were young men engaged in the business of stealing and disposing of automobiles. They had, within two weeks prior to the theft charged in this case, stolen two Ford automobiles, and had sold them to the defendant, Marco and one Rhodes, the witness stating that the first car was stolen in Terre Haute, driven to Washington, Indiana, and sold to Charles Rhodes; that they first negotiated with appellant for the sale of that car, and that at appellant's place of business they met said Rhodes, and that said Rhodes proposed to trade for said car, if Marco did not; that they did make a trade with said Rhodes, receiving a Marmon car and fifty dollars in cash; that they stole a second car in Terre Haute, took it to Washington, Indiana, going to defendant's house, where defendant, Marco, told them he had a car he would trade them. This was done, and they again received fifty dollars in cash; that appellant did not ask the young men where they got either of these cars; he did not say anything to them when negotiating about the first car as to whether he knew it had been stolen. After he traded for the car, he asked if they had a bill of sale for it, and was told that they did not have, but made out a bill of sale as they sat in the car in front of the defendant's place of business. At the time they were negotiating about the first car, defendant said he "knew how we got the car, and after that we went ahead." Witness further stated that he and Larrison stole a third car, a Dodge Brothers' touring car, a fully equipped car; that they got it from a Greek taxi driver named Andrew Manos, whom they met in Terre Haute; that they hired him to take them for a drive to Nine-Mile Island; that they thus traveled to a place known

as Peach Orchard, and after they had made a turn and started back, Larrison, who sat in the rear seat, started to "hold up" Manos, and just as he did that Manos shifted the gears, the car jolted, and the gun was accidentally discharged and killed the taxi driver; that thereafter the body of Manos was by the witness and Larrison buried in the creek bottom; that in the evening of the next day they had a conversation with appellant, Marco, at his residence; that Marco said the car was "too big for him to handle;" that the witness then told Marco that the driver had been "knocked out" by the other fellow, meaning Larrison; and that appellant remarked that he did not like to take any chances, that he would rather have a smaller car, but told the witness to see him the next morning; that appellant on the next morning told the witness he would give him and Larrison $100 down and $150 in thirty days "if nothing came up against the car;" that defendant told Chatten to go and see Rhodes and then to come back; that defendant told the witness to go up one street and he would go up another street, and they would meet in Rhodes' place of business. At Rhodes' place of business a check was written by Rhodes for $100, and that the witness asked Rhodes for a bill, or receipt, whereupon defendant Marco, said "that would throw too much suspicion on us in case we are caught," and that their word was good. Appellant, Marco, thereupon gave to Rhodes a check for fifty dollars, at which time witness asked Marco if they were going "fifty-fifty" on the deal, and Marco laughed, and said, "Yes." The witness asked Marco and Rhodes if they wanted them to bring another automobile, and Marco said "Yes," and witness asked if it would be all right to bring one Saturday, and Marco said, "Yes," whereupon Rhodes spoke up and said that "would be too soon," but Marco said it would be all right, and either Rhodes or Marco said to "bring Fords,

as they are easier to dispose of;" that Marco had said in one of the conversations in connection with one of the earlier trades that "Ford cars were easier to get away with than big cars." Rhodes and Marco were asked if it would be all right to bring two cars, and, after a conversation between Marco and Rhodes, Marco said it would be all right, and to come after night, and to bring them to his home, and to come in without riding around through the streets of Washington; but, if they did come in the daytime, to come to his place of business.

Other witnesses testified as to the existence of the two checks above referred to, and to the fact that appellant stopped payment on the fifty-dollar check he gave to said Rhodes.

Appellant and said Rhodes denied most of the facts testified to by said Chatten, in so far as Chatten recounted transactions and conversations had with himself.

It was for the jury to weigh this testimony, and, having done so, the jury returned a verdict against appellant, and, on the point made, we cannot say that the verdict is contrary to the evidence.

Appellant asserts that, as the evidence shows Manos was dead at the time the car in controversy was taken from him, it thus appears from the evidence that

3.    Manos did not at said time own the car; that it belonged to his estate. The evidence tends to show that these young men conspired to take said automobile from Manos and sell it, and in the execution of their said intention he was killed. Their intent to so take his car existed long before his death, and, if the jury was satisfied of this, the jury was justified in finding that they had to all intents and purposes stolen his car prior to his death, and that he was the owner of it

at the time it was stolen. Under these circumstances we cannot say that the jury's verdict was contrary to law.

Appellant asserts error in the giving of instruction No. 4½ and instruction No. 8 by the court of its own motion. Instruction No. 4½ is as follows:

4. "(4½) It is contended on the part of the defendant in this cause that Andrew Manos, who owned the Dodge car mentioned in the affidavit, was dead at the time Chatten and Larrison got said car, and that dead men cannot own property. It is further contended on behalf of the defendant that Chatten and Larrison, at the time they got possession of the car mentioned in the affidavit, that they intended to hold Manos up and rob him and not to commit a larceny of the car. The court instructs you that if you find from the evidence beyond a reasonable doubt, that Chatten and Larrison, or either of them, shot and killed Manos, and that at the time of such killing, and as a part of said transaction they took possession of said car, then, the court instructs you that the taking of said car, under such circumstances, was a larceny of the car by Chatten and Larrison. In regard to the contention that Chatten and Larrison intended to hold Manos up and rob him and did not intend to commit the offense of larceny, the court instructs you that it would make no difference whether Chatten and Larrison intended to rob Manos of his car or to steal it and thereby commit the offense of larceny, as every robbery necessarily includes the offense of larceny." Instruction No. 8 is as follows:

5. "(8) If you find from the evidence, beyond a reasonable doubt, that before the time it is charged in the affidavit that defendant received the automobile mentioned in the affidavit, from Virgil Larrison and Dewey Chatten, the defendant and Charles Rhodes entered into a conspiracy for the purpose of

prosecuting a common enterprise and that in the prosecution of such common enterprise and to carry out the object and purpose of said conspiracy, induced and procured the said Larrison and Chatten to steal automobiles and bring them to Washington to sell, or trade to the defendant or Rhodes, and that in pursuance of such conspiracy, the said Larrison and Chatten did steal automobiles and bring them to Washington and sold or traded said automobiles to the defendant or Rhodes, and that the automobile mentioned in the affidavit was one of the automobiles stolen by Larrison and Chatten and brought by them to Washington, and sold or traded the same to the defendant, then, the court instructs you that the defendant in this action would be bound by all of the things done and said by the said Rhodes in promoting and to carry into effect the objects and purposes of the said conspiracy."

Appellant's propositions in regard to these instructions are (1) that said instructions are erroneous under any state of facts, and, therefore, this court must presume that the jury was misled thereby; and, further, that when considered in connection with other instructions, these instructions tend to leave the jury in doubt and uncertainty as to the law in the case presented for their consideration; and, again, that the instructions require explanation, and limit the freedom of the jury in considering the evidence, and are ambiguous, obscure, uncertain, unintelligible, meaningless and likely to confuse; and, again, that said instructions determine the weight of the evidence and the facts which the evidence proves.

We are satisfied that neither instruction No. 4½ nor No. 8 is subject to any of said objections, even if it can be said, which we doubt, that said objections present and properly apply any of said propositions.

Appellant's additional point as to said instruction No.

8 is that No. 8 is not applicable to the issues, and should not have been given.

While it is true that the issue made is not against Rhodes and appellant for conspiracy, the evidence discloses a situation making it necessary for the court to determine how far the statements of Rhodes are binding upon Marco, in order that the court may determine whether to admit the statements of Rhodes as tending to show the guilt of Marco in this case; therefore it was proper for the court to state to the jury, as it did in instruction No. 8, that, if they found such conspiracy to exist, the statements made and the acts done by Rhodes in carrying out such conspiracy would be binding upon appellant.

We find no error. The judgment of the trial court is affirmed.

NOTE.—Reported in 125 N. E. 34. Receiving stolen goods: what constitutes crime, 26 Am. Dec. 261; guilty knowledge, sufficiency of proof, 15 Ann. Cas. 899. See under (1-3) 34 Cyc 518, 522, 527.